IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 11-11209 (MCF) |
| INSITE CORPORATION | CHAPTER 11 |
| Debtor | |
| INSITE CORPORATION | ADVERSARY CASE NO. 12-00281 |
| Plaintiff | |
| V. | |
| WALSH CONSTRUCTION COMPANY PUERTO RICO | |
| Defendant | |

## **OPINION AND ORDER**

Before the Court is Defendant, Walsh Construction Company Puerto Rico's (hereinafter "Walsh") motion for summary judgment and opposition thereto by Plaintiff, Insite Corporation (hereinafter "Debtor").[1]  For the reasons stated herein, the Court grants Walsh's motion.

### I – JURISDICTION

The Court has jurisdiction to hear this case, pursuant to 28 U.S.C. § 1334 and the general order of the United States District Court for the District of Puerto Rico dated July 19, 1984, which refers title 11 proceedings to the Bankruptcy Court. This is a core proceeding,

---

[1] Docket Nos. 108, 118, 119, respectively.

-1-

pursuant to 28 U.S.C. § 157(b).  The Court will only address herein the core proceeding of whether or not Walsh incurred in violations of the automatic stay under 11 U.S.C. § 362.[2]

## II – MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. This matter is appropriate for summary judgment disposition as there are no material facts in dispute and one of the parties is entitled to judgment as a matter of law, pursuant to Fed. R. Civ. P. 56(c), as made applicable to these proceedings by virtue of Fed. R. Bankr. P. 7056. Celotex v. Catrett, 477 U.S. 317 (1986)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)); Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

The Court had previously denied Debtor's motion for partial summary judgment because there were genuine issues of fact in dispute; namely, it was previously disputed as to whether Debtor performed all the work required which might have entitled it to payment by Walsh and whether the suppliers and laborers were paid, and if so, by what party (Docket No. 80).  Given that at this juncture, Debtor admits to not having cured arrears upon assumption of the subcontract, and with no other material facts in dispute, the Court is now in a position to resolve Walsh's motion for summary judgment.

## III – UNDISPUTED MATERIAL FACTS

On September 30, 2010, the Department of Veterans Affairs awarded Walsh a construction contract titled "Seismic Correction Phase II, Outpatient Addition" and thereafter on

---

[2] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (the "Bankruptcy Code").

November 23, 2010, Walsh entered into a subcontract with Debtor to perform certain construction services.

As of December 30, 2011, according to Debtor's own Payment Applications, Walsh fully paid for all final Payment Applications.[3] However, Debtor had failed to make the contractually obligated payments to its subcontractors and suppliers. At approximately 9:00 am on December 30th, 2011, Walsh delivered a notice of default to Debtor at the project site. On the same day at 5:49 pm, Debtor filed for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Puerto Rico.

On February 13, 2012, Debtor filed a motion to assume the subcontract with Walsh wherein it admitted to defaults with the executory contract in the payment of subcontractors and suppliers (Docket No. 44). In this motion, Debtor proposed to cure arrears upon assumption of the contract. Before the contract assumption was approved by the Court, Debtor sent a letter to Walsh requesting disbursements of monies claimed to be due under the subcontract. Walsh responded in writing that due to Debtor's failure to pay its subcontractors and suppliers, there were no funds owed to Debtor. On March 1, 2012, the Court approved the assumption of the executory contract with Walsh (Docket No. 72). After assuming the contract with Walsh, Debtor did not cure defaults by making payments to its subcontractors and suppliers nor did it complete any further work under the contract.

## IV – LEGAL ANALYSIS

Debtor filed the instant complaint requesting relief so that Walsh would (1) cease violating the automatic stay by interfering with the contract and withholding payments due in the amount of $586,800.00; (2) return tools and materials seized at the project; and (3) for recovery of damages in the amount of $394,000.00 plus legal expenses and attorney's fees (Docket No. 1). Debtor, in essence, seeks to collect contract funds from Walsh which it considers to be property of the estate. The alleged violations of the automatic stay by Walsh mainly stem from the withholding of these contract funds from Debtor. We begin our analysis by examining the threshold issue of whether the funds being collected by Debtor are property of the bankruptcy estate. If the funds are not property of the estate then Debtor has no recourse to

---

[3] See Docket No. 108-2, at 2, no.8 and Docket No.119, at 2, no.6.

-3-

pursue a violation of the automatic stay.  If the funds are property of the estate, then we must consider whether there was a violation of the automatic stay.

Upon the filing of a bankruptcy petition, a bankruptcy estate is created which consists of all of the property that will be subject to the jurisdiction of the bankruptcy court. 11 U.S.C. § 541.  Property belonging to the estate is protected from piecemeal dismantling by creditors by the automatic stay provisions of Section 362.  It is this central aggregation of property that promotes the fundamental purposes of the Bankruptcy Code: the breathing room given to a debtor that attempts to make a fresh start, and the equality of distribution of assets among similarly situated creditors, according to the priorities set forth within the Code. It is from estate property that the debtor's creditors will be paid. 5-541 Collier on Bankruptcy ¶ 541.01, (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2015).

The automatic stay protects property of the bankruptcy estate and provides for a broad stay of litigation, lien enforcement and other actions, judicial or otherwise, that are attempts to enforce or collect prepetition claims. It also stays a wide range of actions that would affect or interfere with property of the estate, property of the debtor or property in the custody of the estate.  11 U.S.C. § 362(a); 3-362 Collier on Bankruptcy ¶ 362.03, (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2015).

Debtor alleges in essence that Walsh violated the automatic stay by wrongfully retaining contract balances due and owing to it.  According to Debtor, said monies are considered to be property of the estate and therefore subject to the protections of the automatic stay.  The question is whether the contract balances that Debtor wishes to recover are, in fact, property of the estate.  At the time that Debtor filed for bankruptcy, it is undisputed that that it was in default with certain payments to suppliers and laborers.  Upon filing the motion to assume the executory contract with Walsh, Debtor proposed to cure these arrears. However, after the assumption of contract was approved by the Court, Debtor did not cure the defaults by making payments to subcontractors and suppliers, nor did it complete any further work under the contract.[4]

---

[4] See Docket No. 108-2, at 6, ¶ 30 and Docket No.119, at 4, ¶ 30.

-4-

It is well settled law in the First Circuit that contract funds in a construction project do not become property of the estate until the debtor completes the project and fully complies with the payment obligations to the suppliers and laborers.[5]

> The First Circuit has addressed the issue of unpaid suppliers that have performed under a construction contract within the scope of the definition of property of the estate both under the Bankruptcy Act and the Bankruptcy Code. The First Circuit has ruled that "the payment of previously unpaid laborers and materialmen is a cost of completing a contract." Framingham Trust Company v. Gould-National Batteries, Inc., et al., 427 F.2d 856, 859 (1st Cir 1970). In Segovia Development Corporation v Constructora Maza, Inc., 628 F.2d 724 (1st Cir. 1980), the court also held that "contract retainages do not become the property of a contractor until contractual obligations such as payment of the laborers and materialmen are met." 628 F.2d at 728. Consequently, under Segovia the contract retainages do not become property of the estate until the contractual obligations such as payment to the suppliers and materialmen are complied with fully.

Caribbean Resort Constr. & Maint., Inc. v. Coco Beach Util. Co., 318 B.R. 241 (Bankr. D.P.R. 2003).

This requirement of paying laborers, suppliers and materialsmen must be met before Debtor becomes entitled to receive any payment under the subcontract. Debtor never cured the arrears, even upon assumption of the contract with Walsh. As a result, Debtor never became entitled to receive any funds.[6] It follows that these monies are not property of the estate and consequently, Walsh did not violate the automatic stay by withholding payment to the Debtor.

The Debtor also asserts in its opposition to the summary judgment, although missing from the complaint, that the automatic stay was violated by several communications sent by Walsh to Debtors. (Docket No. 118). As such, the Court reviewed the letters, which indicate, among other things, that Debtor was in default and that no monies would be paid to Debtor

---

[5] Pearlman v. Reliance, 371 U.S. 132, 141 (1962); Segovia v. Constructora Maza, 628 F.2d 724 (1st Cir. 1980); Framingham Trust Company v. Gould-National Batteries, Inc., et al., 427 F.2d 856, 859 (1st Cir. 1970). Caribbean Resort v. Coco Beach, 318 B.R. 241 (Bankr. D.P.R. 2003).

[6] No evidence was provided by the parties that USIC, the bonding company, had cured the arrears; in which case, the analysis might be quite different. However, this is not the set of facts before the Court.

because it was in default. Section 365(b) of the Bankruptcy Code applies to contracts for which default has occurred either before or after the commencement of the case. The other party to the contract that Debtor proposes to assume (Walsh in this case) is entitled to insist that any defaults, whenever they may have occurred, be cured, that appropriate compensation be provided, and that, a past default having occurred, adequate assurance of future performance is available. 11 U.S.C. § 365(b); 3-365 Collier on Bankruptcy ¶ 365.06, (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2015).

Furthermore, in the instant case, the collection effort is on the part of Debtor and not Walsh. The roles of debtor and creditor in the instant case are inverted, wherein Debtor is actually acting like a creditor who is seeking to collect monies from Walsh. As such, Walsh is merely asserting its defenses against such effort. The automatic stay prohibits actions that are taken against a debtor, his property and property of the estate.[7] We conclude that Walsh in its communications has not violated the stay by responding to Debtor's demands.

### V – CONCLUSION

Walsh's motion for summary judgment is granted. The Court finds that Walsh did not violate the automatic stay by withholding payments of contract funds to Debtor since these are not property of the estate and thus, not covered by the protections of the automatic stay.

However, the granting of summary judgment in favor of Walsh does not dispose of the adversary case. The complaint alleges that Walsh seized tools and materials belonging to Debtor. Both parties have failed to address the matter nor put the Court in a position to decide on this pending issue. The parties are ordered within 30 days to file an amended pre-trial report limited to this singular remaining issue.

Insomuch as Walsh has explicitly withheld its consent that the Bankruptcy Court enter judgment on this matter[8] and in the event that an appellate court concludes that the bankruptcy judge could not have entered a final order or judgment consistent with Article III of the United

---

[7] 11 U.S.C. § 362 (a)(1) (against the debtor); (a)(2) (against the debtor or property of the estate); (a)(3) (any act to obtain property of the estate); (a)(4) (against property of the estate); (a)(5)(property of the debtor); (a)(6)(against the debtor); (a)(7)(against the debtor).

[8] See Docket No. 108, at 2, fn 1: Walsh maintains that, to the extent the Court is required to determine substantive rights of the parties relative to the subcontract, the issues are non-core and Walsh does not consent to entry of

States Constitution, this decision may be deemed to be this Court's Proposed Findings of Fact and Conclusions of Law, subject to the procedures set forth in Fed. R. Bankr. P. 9033.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of October, 2015.

_____
MILDRED CABAN FLORES
United States Bankruptcy Judge

judgment. See In re Electric Machinery Enterprises, Inc., 479 F.3d 791, 798 (11th Cir. 2007)(holding "determination of whether Whiting-Turner owes EME money under their contractual agreement does not involve a right created by federal bankruptcy law, and it is not a proceeding that would arise only in bankruptcy).