IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 11-11209 (MCF) |
| INSITE CORPORATION | CHAPTER 11 |
| Debtor | |
| INSITE CORPORATION | ADVERSARY CASE NO. 12-00281 |
| Plaintiff | |
| v. | |
| WALSH CONSTRUCTION COMPANY PUERTO RICO | |
| Defendant | |

**OPINION AND ORDER**

Before the Court is Plaintiff, Insite Corporation's (hereinafter "Insite) motion for reconsideration of the order granting the motion for summary judgment filed by Defendant, Walsh Construction Company Puerto Rico (hereinafter "Walsh").[1] For the reasons stated below, the Court denies Insite's motion for reconsideration and dismisses the adversary complaint.

I – JURISDICTION

The Court has jurisdiction to hear this case, pursuant to 28 U.S.C. § 1334 and the general order of the United States District Court for the District of Puerto Rico dated July 19,

---

[1] Docket No. 130.

-1-

1984, which refers title 11 proceedings to the Bankruptcy Court.[2]  The Court will only address herein the core proceeding of whether or not Walsh incurred in violations of the automatic stay under 11 U.S.C. § 362.[3]

### III – UNDISPUTED MATERIAL FACTS

On September 30, 2010, the Department of Veterans Affairs awarded Walsh a construction contract titled "Seismic Correction Phase II, Outpatient Addition" and thereafter on November 23, 2010, Walsh entered into a subcontract with Debtor to perform certain construction services.[4]

As of December 30, 2011, according to Debtor's own Payment Applications, Walsh fully paid for all final Payment Applications.[5] However, Debtor had failed to make the contractually obligated payments to its subcontractors and suppliers.  At approximately 9:00 am on December 30, 2011, Walsh delivered a notice of default to Debtor at the project site.  On the same day at 5:49 pm, Debtor filed for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Puerto Rico.

On February 13, 2012, Debtor filed a motion to assume the subcontract with Walsh wherein it admitted to defaults with the executory contract in the payment of subcontractors and suppliers (Docket No. 44).  In this motion, Debtor proposed to cure arrears upon assumption of the contract.  Before the contract assumption was approved by the Court, Debtor sent a letter to Walsh requesting disbursements of monies claimed to be due under the subcontract.  Walsh responded in writing that due to Debtor's failure to pay its subcontractors and suppliers, there were no funds owed to Debtor. On March 29, 2012, the Court approved the assumption of the

---

[2] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (the "Bankruptcy Code").

[3] See Docket No. 108, at 2, fn 1: Walsh maintains that, to the extent the Court is required to determine substantive rights of the parties relative to the subcontract, the issues are non-core and Walsh does not consent to entry of judgment.

[4] The undisputed facts remain the same as in our previous Opinion and Order granting the summary judgment, with one exception, which is the date that the executory contract was approved by the Court; it is March 29, 2012 not March 1, 2012 as originally stated.

[5] See Docket No. 108-2, at 2, no. 8 and Docket No.119, at 2, no. 6.

executory contract with Walsh (Docket No. 72).  After assuming the contract with Walsh, Debtor did not cure defaults by making payments to its subcontractors and suppliers nor did it complete any further work under the contract.

On October 29, 2015, the Court granted Walsh's motion for summary judgment finding that Walsh did not violate the automatic stay.  However, insomuch as the complaint alleged that Walsh seized tools and material belonging to Insite, the judgment did not dispose of the adversary proceeding. The parties were ordered to file a pre-trial report on the remaining contested matter, but Insite later abandoned the sole pending cause of action.[6]  Before the Court, now remains Insite's motion for reconsideration of our aforementioned order.

### IV – LEGAL ANALYSIS

The Standard for Rule 9023

Rule 9023 of the Federal Rules of Bankruptcy Procedure makes Rule 59 of the Federal Rules of Civil Procedure applicable to bankruptcy proceedings, except for the time period to file a motion to alter or amend a judgment. [7] Rule 59(e) allows a party to file "[a] motion to alter or amend a judgment…." Although Rule 59(e) does not provide specific grounds to obtain the remedy requested, the Court of Appeals for the First Circuit in Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005), highlighted the following four grounds for granting a motion for reconsideration under Rule 59(e):

> (1) manifest errors of law and fact;
> (2) newly discovered or previously unavailable evidence;
> (3) manifest injustice; and
> (4) an intervening change in controlling law.

402 F.3d at 7 (citing 11 C. Wright et al., Federal Practice & Procedure § 2810.1 (2d ed. 1995)).

Reconsideration of a judgment under Rule 59(e) is an extraordinary remedy which should be used sparingly and only when the need for justice outweighs the interests set forth by a final judgment. The underlying policy of reconsideration is to provide a court with a means to

---

[6] Docket Nos. 123 and 138.

[7] Pursuant to Fed. R. Civ. P. 59(e), a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. Rule 9023 reduces the period to 14 days after entry of judgment in bankruptcy proceedings.

-3-

correct its own errors. <u>Aybar v. Crispin-Reyes</u>, 118 F.3d 10, 16 (1st Cir. 1997). Conversely, Rule 59(e) does not exist to allow parties a second chance to prevail on the merits. <u>Voelkel v. General Motors Corp.</u>, 846 F. Supp. 1482, 1483 (D. Kan. 1994), <u>aff'd</u>, 43 F.3d 1484 (10th Cir. 1994). "Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence . . . [t]hey may not be used to argue a new legal theory." <u>Jorge Rivera Surillo & Co. v. Falconer Glass Indus.</u>, 37 F.3d 25, 29 (1st Cir. 1994).

In its motion to alter or amend, Insite asks the Court to vacate its order granting summary judgment in favor of Walsh for several reasons.[8]  We will address each separately as follows.

*Insite argues that issues of fact preclude the entry of summary judgment.*

Insite alleges that the Court erroneously concludes that it is undisputed that "As of December 30, 2011, according to Debtor's own payment applications, Walsh fully paid for all final payment applications."[9] Insite avers that as of December 30, 2011, Walsh owed it a total of $465,890.00, so it follows that this is a disputed fact.

Insite also alleges that the Court erroneously concluded that it is undisputed that:

> Debtor had failed to make contractually obligated payments to its subcontractors and suppliers. At approximately 9:00 am on December 30th, 2011, Walsh delivered a notice of default to Debtor at the project site. On the same day at 5:49 pm, Debtor filed for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Puerto Rico.[10]

Insite avers that, as of December 30, 2011, there was no alleged default by them.

According to Insite, since these two material facts are in dispute: (1) that Walsh had paid all final applications due to Insite as of December 30, 2011 and (2) that Insite was not in default with subcontractors as of December 30, 2011; the court is not in a position to dispose of the matter by summary judgment.

---

[8] Docket No. 123.
[9] Docket No. 123, at 3.
[10] Docket No.123, at 3.

Upon careful examination of the undisputed facts, we found in Walsh's statement of uncontested material facts (Docket No. 108-2), at number 8 as follows:

> 8. Accordingly as of December 30, 2011, according to Insite's own Payment Applications, Insite had been fully paid for all final Payment Applications which Insite had submitted to Walsh. See Exhibit 1 hereto, Affidavit of Mark Brunski at ¶ 10.

Insite submitted a response to Walsh's statement of material facts and regarding number 8, they expressed the following: **Admitted**.  In other words, Insite admitted that it is undisputed that as of December 30, 2011, Walsh had paid them all final payment applications.[11]

To address the second material fact, we found in Walsh's statement of uncontested material facts (Docket No. 108-2), at number 10 as follows:

> 10.  As a result of Insite's failure to comply with its contractual obligations to pay its subcontractors and suppliers, at approximately 9:00 a.m. on December 30, 2011, Mark Brunski, Walsh's Project Manager, hand delivered a copy of the notice of default letter (hereinafter "Declaration of Default") to Heriberto Flores of Insite at the Insite trailer located at the Project site. See Affidavit of Mark Brunski attached hereto as Exhibit 1 at ¶ 12.

Insite submitted a response to Walsh's statement of material facts and regarding number 10, they expressed the following: **Admitted**.  Therefore, Insite admitted that it is undisputed that as of December 30, 2011, it was in default with subcontractors and suppliers.[12]

By Insite's own admissions, these two material facts are not in dispute and as such, the Court proceeded to resolve the summary judgment before its consideration.  Furthermore, the Court finds Insite's position disingenuous, in view of the fact, that they filed motions for summary judgment as well in which it alleged that there were no material facts in dispute.[13]

---

[11] Docket No. 119, at 2, ¶8.
[12] Docket No. 119, at 3, ¶10.
[13] Docket Nos. 47 and 67.

*Insite argues that Walsh violated the automatic stay by exercising post-petition contractual rights.*

Insite argues that the Court incorrectly framed the main issue and completely omitted considering the violation of the automatic stay.  Our legal analysis specifically entertained the three counts of the complaint as follows:

> Debtor filed the instant complaint requesting relief so that Walsh would (1) cease violating the automatic stay by interfering with the contract and withholding payments due in the amount of $586,800.00; (2) return tools and materials seized at the project; and (3) for recovery of damages in the amount of $394,000.00 plus legal expenses and attorney's fees (Docket No. 1).[14]

In addition, our analysis included an evaluation of several communications sent by Walsh to Insite which were not mentioned in the complaint.  We stated that Walsh was entitled to insist that any defaults, whenever they occurred, be cured, that appropriate compensation be provided, and that, a past default having occurred, adequate assurance of future performance is available.[15]  The Court found that Walsh's actions were an assertion of its defenses against the collection efforts of Insite, not a violation of the automatic stay.  In this case, the collection effort was on the part of Insite, not Walsh, for monies that it was not entitled to receive since it had not paid laborers, suppliers and materialsmen in the construction project.[16]  Regarding count two of the complaint, the return of tools and material seized, this issue was not resolved by the summary judgment and the parties were ordered to file a pre-trial report limited to this singular issue.[17]

*Insite argues that Walsh withheld monies from it without obtaining an order of relief from the automatic stay.*

Insite alleges that Walsh enforced articles 3.12 and 8.1 of the subcontract to withhold payments of money due to them.  Once again this argument is without merit since by its own admissions, as of December 30, 2011, Insite had been fully paid for all final payment applications which it had submitted to Walsh. Upon filing the bankruptcy petition on

---

[14] Opinion and Order, Docket No. 123, at 3.
[15] Opinion and Order, Docket No. 123, at 6; 11 U.S.C. § 365(b); 3-365 Collier on Bankruptcy ¶ 365.06, (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2015).
[16] Docket No. 123, at 5.
[17] Docket No. 123, at 7.

December 30, 2011, Insite never cured arrears by paying laborers, suppliers and materialsmen and therefore, never became entitled to receive any further payment from Walsh.

> *Insite argues that the order granting its assumption of executory contract with Walsh was entered on March 29, 2012 and not on March 1, 2012.*

Insite pointed out this error in its motion and we stand corrected.  The executory contract was approved by the Court on March 29, 2012 not March 1, 2012 as originally stated in our Opinion and Order. The correct docket number was referenced; however, inadvertently we included the wrong date.  Insite claims that this is material because Walsh withheld funds during this period; however, based on the aforementioned, this argument is without merit because as per Insite's own admission, there were no funds due which could be withheld by Walsh.

> *Insite argues that the notices of default sent by Walsh prior to the assumption of subcontract are null and void.*

The Court pointed out that, even though not contained in the complaint, it reviewed the letters sent by Walsh which indicate, among other things, that Insite was in default and that no monies would be paid to it because of the default. As expressed previously, Walsh in its communications was asserting its defenses against Insite, who was seeking to collect monies from it without having paid the laborers and materialsmen.

> *Insite argues that it bound itself to cure arrears under the subcontract as soon as Walsh paid it.*

The Court finds this argument hard to understand.  First of all, Insite now claims that it had no arrears as of December 30, 2012 when it filed for bankruptcy.[18] For argument's sake, if this is true, why did it offer to cure arrears if none existed?

In addition, Insite's argument is circular.  It will cure arrears when it is paid by Walsh, but it is not eligible to receive future payment applications from Walsh until arrears are cured. Under this premise, Insite will never be able to cure arrears.

---

[18] Insite states in its motion for reconsideration, the following: "Hence, as of December 30, 2011 there was no alleged default by Insite. To the contrary, the documentary evidence shows that it was Walsh who owed to Insite the amount of $465,890."  Docket No. 130, at 6.

*Insite argues that Walsh was legally precluded from offsetting amounts owed prepetition.*

Insite states that Walsh was precluded from offsetting amounts due to Insite; however, this argument is without merit, as well, because as of the petition date according to Insite's own admissions, Walsh had fully paid it for all final payment applications.

*Insite argues that the material facts in Caribbean Resort v. Coco Beach are distinguishable from the instant case.*

Insite argues that pursuant to the Caribbean Resort Constr. & Maint., Inc. v. Coco Beach Util. Co., 318 B.R. 241 (Bankr. D.P.R. 2003), the case cited by the Court in its Opinion and Order, Walsh cannot self-adjudicate amounts owed to suppliers of labor and materials or to pay the surety. Futhermore, it alleges that the above case was based on consignment of monies in court while the instant case is one of self-adjudication and therefore, not applicable. This argument is premised on the fact that Walsh owes Insite monies and is retaining them. Once again, the Court disagrees that this case is distinguishable. Caribbean Resort v. Coco Beach is the leading case in the district which establishes that contract funds in a construction project do not become property of the estate until the debtor completes the project and fully complies with the payment obligations to the suppliers and laborers. As such, Coco Beach is applicable. Insite never cured its payment obligations and it follows that it never became entitled to any payment under the subcontract.

## V – CONCLUSION

For the reasons aforementioned, the Court denies Insite's motion for reconsideration. Considering that Insite withdrew the singular remaining cause of action against Walsh regarding the seizure of seized tools and materials,[19] the instant adversary proceeding is now dismissed.

 **IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28 day of March, 2016.

MILDRED CABAN FLORES
United States Bankruptcy Judge

---

[19] Docket No. 138.

-8-